### 19792

Robert HARRINGTON, Respondent, v. Mary W. Burch EDWARDS, as Administratrix of the Estate of Bennie Leroy Burch, and Nationwide Mutual Insurance Company, Appellants.

(203 S. E. (2d) 691)

264

*Messrs. Joseph E. Major* and *A. Marvin Quattlebaum* of *Leatherwood, Walker, Todd and Mann,* Greenville, *for Appellants,*

*John A. Hagins, Jr., Esq.,* of *Abrams, Bowen & Townes,* Greenville, *for Respondent,*

March 20, 1974.

LITTLEJOHN, Justice:

The plaintiff-respondent, Harrington, suffered personal injuries while riding in an automobile owned and operated by Bennie L. Burch. Burch was killed. This action was commenced by Harrington against Mary W. Burch, as Administratrix of the Estate of Bennie L. Burch, to recover damages sustained as a result of the collision.

At the time of the collision Nationwide Mutual Insurance Company had issued its liability insurance coverage policy to protect Burch from liability arising as a result of his negligent operation of the automobile. In addition, Nationwide, by way of endorsement in the same policy, provided medical payments coverage to injured occupants of the Burch automobile, regardless of liability on the part of the operator of the vehicle.

Prior to the institution of this tort action, Nationwide had advanced medical payments to Harrington in excess of the $1,000.00 stipulated in the medical payments endorsement. At the time of the advancement no written agreement was executed by Harrington.

The jury returned a verdict in the amount of $5,412.05 against the administratrix of Burch's estate. This amount included Harrington's medical bills. Nationwide paid the jury-verdict judgment except for $1,000.00. The lower court ruled that Harrington was entitled to collect the entire amount of $5,412.05 by reason of the liability insurance coverage, plus $1,000.00 by reason of the medical payments coverage. Both Nationwide and Burch's administratrix have appealed.

It is the contention of Harrington that he is entitled to collect $5,412.05 under the liability coverage, plus $1,000.00 under the medical payments coverage, and that the medical payments provision did not allow an offset against the judgment.

It is the position of Nationwide that under the medical payments policy provisions the $1,000.00 already disbursed should be credited against the judgment.

The liability insurance policy on an automobile must meet the requirements of South Carolina statutes. There is, however, no statute in this State requiring, controlling, or regulating medical payments coverage; accordingly the medical payments coverage which Burch provided for his passengers, including Harrington, was entirely voluntary. We therefore look to the terms of the contract to determine what benefits are provided for Harrington. The contracting parties are Burch and Nationwide. Harrington, as a third party beneficiary is entitled to recover only that amount provided by the contract.

The contract as set forth in the medical payments endorsement of the policy provides in relevant part as follows:

"In consideration of the payment of the required premium the Company agrees with the Policyholder . . . as follows:

* * *

"To pay all reasonable expenses, incurred within one year following the accident, for necessary medical . . . services . . . , to or for:

"B. any person . . . who by accident suffers bodily injury, sickness, disease or death while in or upon, entering or alighting from:

1. the described automobile being used by the Policyholder, . . . :

\*   \*   \*

"Provided that no such payment shall be made . . . unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor, against any person entitled to protection because of bodily injury arising out of any accident to which the Automobile Bodily Injury Liability Coverage applies."

From the last paragraph quoted above, it is readily seen that the liability coverage and the medical payments coverage are not entirely severable. It is provided that Burch's insurance carrier did not have to pay, under the medical payments provision, the $1,000.00 unless and until Harrington "executed a written agreement" that the amount paid would be applied towards the settlement of any judgment payable under the liability coverage.

The admissions of counsel for Harrington in argument before this Court narrow the issues. He candidly admits that Nationwide was not required by the policy to pay the $1,000.00 unless Harrington executed a written agreement to apply it to the judgment. And secondly, he admits that if Harrington had executed the written agreement prior to receipt of the $1,000.00, an offset would be proper.

The question, therefore, for determination by this Court is: Did the fact that Nationwide paid the $1,000.00 without

requiring Harrington's signature deprive the company of the right to offset?

We find no logic in the argument that if Nationwide had desired to offset the $1,000.00, it could have required Harrington to sign an agreement. The waiver of the requirement that a written agreement be executed by Harrington before such payment was made did not waive the company's right to credit or offset the judgment. The provision permitting Nationwide to require the agreement enures solely to the benefit of the insurer, and Harrington was not prejudiced by Nationwide's failure to require such written agreement. Under the policy provisions, Nationwide is entitled to offset the payment.

Much litigation has arisen out of policy provisions akin to those involved in this action. Each case must be determined on the basis of the policy provisions and the facts surrounding the claim. Our holding is limited to the policy provisions and the facts here involved. We think the policy provisions require the determination we have made. Our holding is certainly consistent with what we conceive to be the intent of the contracting parties. Of interest are the cases of *Yarrington v. Thornburg*, 205 A. (2d) 1 (Del. Supr. 1964), and *Tart v. Register*, 257 N. C. 161, 125 S. E. (2d) 754 (1962); also, Annot., 11 A. L. R. (3d) 1115 (1967).

We deem it unnecessary to consider the subrogation section of the policy under which Nationwide also contends it should be entitled to offset.

Reversed.

Moss, C. J., and BRAILSFORD, J., concur in result.

LEWIS and BUSSEY, JJ., dissent.

BRAILSFORD, Justice (concurring in result):

I concur in the result but would rest the decision on a different ground. As I construe the record, the issue before the trial judge was the amount of the judgment to be en-

tered against the administratrix of the insured in the tort action. By stipulation of the parties, the jury was instructed to write a full verdict including plaintiff's medical expense. Whether the judgment to be entered on that verdict should be reduced by the $1,000.00 paid to plaintiff before trial by Nationwide, under the medical payments coverage of the tortfeasor's policy, was reserved for decision by the court. This appeal is from denial of that credit.

Although the judgment will in normal course be paid by Nationwide, this is not an action on the insurance contract, and the critical question is whether the administratrix is entitled to credit for the advance payment of plaintiff's medical expense. The same answer is required as though the verdict had exceeded the liability coverage so that the double payment would in fact fall on the insured's estate.

Here, the tortfeasor voluntarily paid the premium for the insurance coverage which paid plaintiff's medical expense to this extent. I see no sound reason why damages assessed against his administratrix in the tort action should not reflect this payment. Allowance of the credit would do no violence to the collateral source doctrine, which refuses to grant a windfall benefit to a wrongdoer by crediting him with monies received by the injured person from an independent source; and it would vindicate the policy of the law against double recovery. While the authorities are not in accord, I prefer the reasoning of the cases which adopt this view. *Yarrington v. Thornburg* (Del. Supr.) 205 A. (2d) 1, 11 A. L. R. (3d) 1110, Annot. at 1115 (1964). It is not inconsistent with cases in which the injured person has been allowed to recover against the insurer on the medical payments provision of the policy after recovery on or settlement of his tort claim against the insured. See, *e. g.*, *Moorman v. Nationwide Mutual Insurance Co.*, 207 Va. 244, 148 S. E. (2d) 874 (1966), and *Beschnett v. Farmers Equitable Insurance Company*, 275 Minn. 328, 146 N. W. (2d) 861 (1966). *Blocker v. Sterling*, 251 Md. 55,

246 A. (2d) 226 (1968), in which credit for advance medical payments was disallowed in the tort action is not persuasive because of its heavy reliance upon *Moorman, supra,* where the action was on the insurance contract after settlement of the tort claim.

Moss, C. J., concurs.

Bussey, Justice (dissenting) :

Not being persuaded, by either the proposed opinion of Mr. Justice Littlejohn or the concurring opinion of Mr. Justice Brailsford, that the judgment below should be reversed, I most respectfully dissent.

The issues were presented to the court below for decision on a written stipulation of facts and the order appealed from indicates that additional facts, not contained in the written stipulation, were orally stipulated to upon the hearing. Total medical expenses advanced by Nationwide prior to the judgment amounted to $3,488.95. The extent of the medical bills would indicate that the injuries sustained by Mr. Harrington were quite serious and the jury verdict in the amount of $5,412.05 gives rise to the inference that the jury compromised the issue of liability by compensating Mr. Harrington only in part for his injuries and damage.

It would appear that when advance medical payments were being made to Harrington he was unaware of the medical payments coverage in Nationwide's policy, provided for his benefit, let alone any of the policy provisions now relied upon by Nationwide.

Assuming, without necessarily conceding, the validity of the proviso to the effect that no payment would be made under the medical payments coverage in the absence of the written agreement therein referred to, such accorded Nationwide the option of two courses of action. It could have if it so desired, promptly advised Harrington that it was responsible for his medical expenses up to the sum of $1,000.-

00, without regard to any tort liability on the part of Burch, and taken from Harrington the written agreement in accordance with the proviso. On the other hand, it could withhold such information from Harrington, take no written agreement from him and gamble upon being able to negotiate an advantageous settlement of all its liability under its policy, with Harrington being ignorant of the fact that Nationwide owed him $1,000.00 in any event. It is clearly inferable that it advisedly chose the latter course in this case as there is no other reasonable or logical explanation of the failure of Nationwide to take such written agreement.

Nationwide's efforts to arrive at an adjustment favorable to it were, of course, unsuccessful and it now asks this Court to restore it to the same position it would have occupied had it laid all of its cards on top of the table in dealing with Harrington and taken the written agreement in accordance with the proviso. I agree that each case should be determined on the basis of the policy provisions and the facts and circumstances involved. As I see it Nationwide clearly waived the proviso, deliberately making its own bed in which we should leave it lying.

As to the basis of Mr. Justice Brailsford's concurrence, I agree that strictly speaking this is not an action on the insurance contract, but I think the real issue is substantially the same, such issue being the extent of liability of Nationwide under its insurance contract and the facts and circumstances of this case. As pointed out by Justice Brailsford, the authorities do not appear to be in accord as to whether or not, and under what circumstances, an insurer is entitled to take credit against a tort judgment for money paid by it under a medical payments endorsement. To a large extent the various cases turn upon the facts and policy provisions involved in the individual cases. In *Yarrington v. Thornburg* (Del. Supr. 205 A. (2d) 1, 11 A. L. R. (3d) 1110, Annot. 1115), the judgment exceeded the liability

limit of the policy and the offset allowed inured to the benefit of the insured who had paid the premium on the policy and not to the insurer who received the premium. I do not agree with the proposition that the same answer is required here, as though the verdict had exceeded the liability coverage, with the burden of a double payment in fact falling on the insured's estate. In view of the jury verdict here, which I think obviously was a compromise one, it cannot be said with any degree of certainty that the denial of the offset would in fact result in Harrington receiving double payment. In any event it is my view that the weight of authority from other jurisdictions supports the disallowance of an offset under the facts and circumstances of this case. In addition to cases cited in the annotation following the *Yarrington* case, several other recent decisions are persuasive of the result which I would reach. See, *Moorman v. Nationwide Mutual Insurance Company*, 207 Va. 244, 148 S. E. (2d) 874; *Blocker v. Sterling*, 251 Md. 55, 246 A. (2d) 226; *Beschnett v. Farmers Equitable Insurance Company*, 275 Minn. 328, 146 N. W. (2d) 861.

Under the respective views of my colleagues, neither of them found it necessary to consider the subrogation provisions of the policy under which Nationwide also contends it should be entitled to an offset and I accordingly, for the present, intimate no opinion thereabout. Consideration of such will remain unnecessary in the event a majority of the court should conclude that the judgment below should be reversed upon either of the bases proposed in the respective opinions.

Lewis, J., concurs.