Loye DOUGLAS *v.* ADAMS TRUCKING COMPANY, Inc.

00-1242                                       46 S.W.3d 512

Supreme Court of Arkansas
Opinion delivered June 7, 2001

*Perroni & James Law Firm*, by: *Samuel A. Perroni* and *Janan Arnold Davis*, for appellant.

*Matthews, Sanders & Sayes*, by: *Doralee Idleman Chandler* and *Roy Gene Sanders*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Loye Douglas, appeals from the judgment of the circuit court in which the court found that appellee Adams Trucking Co., Inc., was entitled to an offset of $108,734.57 against the jury's award of damages in the amount of $178,000.[1] We affirm the finding of an offset, but we reverse and remand with instructions to modify the offset amount to $76,723.24.

---

[1] Although the initial lawsuit was filed by both Loye and Anna Douglas as plaintiffs, only Loye Douglas brings this appeal.

The facts of this case arise from a personal injury–action. On June 5, 1997, appellant Loye Douglas, a 55–year–old chicken farmer, was driving his tractor with an attached mower along the side of Highway 10 in Perry County. While doing so, he was struck from behind by a tractor–trailer rig driven by Billy Carl Holmes and owned by Adams Trucking. The impact of the collision caused his tractor to travel forty feet and strike a tree. Douglas was thrown from the tractor and suffered multiple injuries, including facial lacerations, broken ribs, fractured vertebrae, and a partially collapsed lung. He was unable to work on his chicken farm for about nine months.

Following the accident, the liability carrier for Adams Trucking, Columbia Insurance Company, made several advance payments to Douglas for his injuries and loss of property, which totaled $110,220.13. This amount included $63,111.33 for lost wages, $19,011.10 for property damage, $18,098.24 for medical expenses, funds to reimburse Douglas for hired help in the amount of $8,900, and $1,099.46 for reimbursement of out-of-pocket expenses. The $63,111.33 represents a total of the following payments made to Douglas by Columbia Insurance on the dates noted with the specified statement as to what the payment was for:

- Check dated 7-3-97 in the amount of $1,000.00; payment for "Advance on Settlement."

- Check dated 7-11-97 in the amount of $7,012.37; payment for "Advance."

- Check dated 8-6-97 in the amount of $6,012.37; payment for "Advance on Income."

- Check dated 9-11-97 in the amount of $7,012.37; payment for "Income Advance."

- Check dated 10-10-97 in the amount of $7,012.37; payment for "Income Advance."

- Check dated 11-7-97 in the amount of $7,012.37; payment for "Income Advance."

- Check dated 12-12-97 in the amount of $7,012.37; payment for "Income Advance."

- Check dated 1-14-98 in the amount of $7,012.37; payment for "Advance."

- Check dated 3-16-98 in the amount of $7,012.00; payment for "Lost Wages, Advance on Settlement."

- Check dated 7-10-98 in the amount of $7,012.00; payment for "Lost Income."[2]

After receiving the payments, Douglas and Columbia Insurance attempted to settle the entire liability matter. Their efforts were unavailing. On April 5, 1999, Douglas and his wife, Anna Douglas, filed a personal-injury complaint against Adams Trucking and alleged negligence. They asked for damages for pain and suffering, disfigurement, permanent injuries, lost wages, loss of present and future earning capacity, and loss of consortium. On February 22, 2000, Adams Trucking moved for offset for all of the advance payments, which totaled $110,220.13. The Douglases responded and denied that any payments were made "directly to them" as advance payments on any liability claim. They further asserted that there was no agreement between the parties that the funds were paid for the damages they sustained.

On March 9, 2000, the circuit court held a pretrial hearing on the motion for offset. At the hearing, counsel for the Douglases urged the court to instruct the jury to break down any damages awarded into specific elements such as medical expenses, property loss, and lost earnings and profits. The circuit court tentatively agreed to do this but reserved ruling on whether a credit for advance payments would be allowed against a total damage award or whether the credit would only be allowed for advance payments which corresponded with a specific element of damage.

Trial of this matter commenced on March 20, 2000. Prior to the submission of the case to the jury, it was stipulated by the parties and presented to the jury that Loye Douglas or the Douglases had incurred the following damages: (1) property damage in the amount of $18,625.00; (2) medical bills in the amount of $18,098.24; and (3) paid outside help in the amount of $8,904.00.[3]

---

[2] The total amount of these checks is actually $63,110.59. We will continue to use $63,111.33 for ease of reference.

[3] Though the stipulated amount for outside help was $8,904, the correct amount based on the record appears to have been $8,900.

The case was submitted to the jury as a special verdict with the elements of damage broken out, and the jury returned a verdict in favor of Loye Douglas, awarding him:

| | |
|---|---|
| Medical Expenses | $19,000.00; |
| Personal Property | $19,000.00; |
| Lost Earnings and Profits | $40,000.00; |
| Nature and Permanency of Injury | $0.00; |
| Pain and Suffering | $100,000.00; |
| Loss of Ability to Earn | $0.00. |

The circuit court conducted a posttrial hearing on the offset issue on March 29, 2000. At that hearing, Loye Douglas testified about the advance payments by Columbia Insurance, and the court received evidence. At the conclusion of the hearing, the court found that Adams Trucking was entitled to an offset in the total amount of advance payments, which was $108,734.57. This amount included the following advance payments but excluded the $1,099.46 paid to the Douglas family for reimbursement of out-of-pocket expenses: (1) $63,111.33 for lost wages, (2) $18,625.00 for property loss, (3) $18,098.24 for medical expenses, and (4) $8,900.00 for the hiring of outside help. That left an unpaid judgment to be paid by Adams Trucking of $69,265.43.

## I. Offset For Advance Payments

The first issue raised by Loye Douglas on appeal is whether the circuit court erred in granting an offset against the jury verdicts for advance payments by Columbia Insurance. Under this point, Douglas argues against any offset being made and urges several theories for his position.

We observe at the outset that a paucity of cases exists on this point. However, the cases that do exist tend to support a credit for advances paid. See, e.g., Keating v. Contractors Tire Serv., Inc., 428 So. 2d 624 (Ala. 1983); Russell v. Ashe Brick Co., 267 S.C. 640, 230 S.E.2d 814 (1976); Edwards v. Passarelli Bros. Auto. Serv., Inc., 8 Ohio St. 2d 6, 221 N.E.2d 708 (1966). See also State Farm Mut. Auto. Ins. Co. v. Rose, 52 Ark. App. 175, 916 S.W.2d 764 (1996) (liability

carrier entitled to an offset against a jury verdict for medical expenses previously paid). *But see Matthews v. Watkins Motor Lines, Inc.*, 419 So. 2d 1321 (Miss. 1982) (Supreme Court denied credit for advances made where defendant/tortfeasor did not raise issue of credit due until after the jury verdict).

In *Edwards v. Passarelli Bros. Auto. Serv., Inc.*, *supra*, for example, the Ohio Supreme Court held:

> [W]here an advance payment is made to a possible tort-claimant upon condition that such payment is to be credited to the amount of any final settlement or judgment in favor of such tort-claimant, such sum may be credited to any such final settlement or judgment; and, if judgment is rendered, the proper procedure is to ask by post-judgment motion for a credit toward satisfaction of the judgment.

8 Ohio St. 2d at 9, 221 N.E.2d at 711. The distinguishing factor of the *Edwards* case is that there was an agreement in effect which conditioned receipt of payment on the basis that any payment would be credited against any final settlement or judgment.

In two subsequent cases from other jurisdictions, there was no express agreement between the injured party and the insurance carrier, but advance payments were made nonetheless. In *Russell v. Ashe Brick Co.*, *supra*, the South Carolina Supreme Court held that Ashe Brick was entitled to an offset notwithstanding the absence of any receipt from the potential claimant stipulating that payment would be credited against any final settlement or judgment. In that case, the plaintiff, Russell, had been injured at Ashe Brick when a pallet of bricks collapsed on top of him. The insurer for Ashe Brick sent Russell a check for $5,500.00, together with a letter stating its regret that a settlement had not been reached and its hope that the payment would bring the matter to an amicable conclusion. Russell subsequently brought suit against Ashe Brick, and judgment was entered against Ashe Brick in the amount of $2,000.00 for actual damages and $5,000.00 punitive damages. Ashe Brick then filed a posttrial motion in which it requested an offset and credit in the amount of the $5,000.00 previously paid to Russell. The trial court disallowed this, but the Supreme Court reversed. The Supreme Court noted that Russell had cited cases from other jurisdictions which involved advance payments, which the court described as "the laudable practice of expediting payment to injured parties prior to and in anticipation of future settlement or judgment." *Russell*, 267 S.C. at 643, 230 S.E.2d at 815. Additionally, the

Supreme Court stated that in those cases, receipts were signed which stipulated that the payments would be credited against any final settlement or judgment. The court concluded that even though signed receipts were a factor notably absent from the case at hand, a credit was warranted. The court said:

> However, there is a common thread running through all the cases which needs no precedential support and is particularly persuasive. Why should the respondent be allowed to collect $12,500.00 on a judgment that the jury has assessed at $7,000.00? The disjointedness of the question perhaps suggests why it has not been necessary heretofore to litigate it. The nonexistence of a receipt delineating the obvious desire to credit the payment against any future liability secured on the same claim is without legal significance. *See Harrington v. Edwards* [footnote omitted], 262 S.C. 263, 203 S.E.2d 691 (1974).

*Russell*, 267 S.C. at 643-44, 230 S.E.2d at 815.

Similarly, in *Keating v. Contractors Tire Serv., Inc., supra,* the Alabama Supreme Court held that where the issue was properly raised prior to trial, the trial court did not err in requiring that advance payments to the injured claimant by the tortfeasor's liability insurer be credited against a subsequent judgment in favor of the claimant, notwithstanding the absence of a prior written agreement between the insurer and claimant. After being injured in a vehicle collision, the plaintiff, Keating, received payments totaling $8,853.35 for medical payments and $27,267.29 for lost wages from the defendant's insurer. There was no agreement that these advance payments would be credited against any judgment Keating might receive. Following Keating's filing of his suit, Contractors Tire pled payment and offset in its answer, and the court granted severance of the credit issue. The jury returned a verdict in favor of Keating for $114,000.00, which the trial court reduced by the amount of the advance payments made. In its opinion, the Alabama Supreme Court concluded:

> We hold, therefore, that the trial judge did not err in allowing credit for the advance payments. Keating accepted advances from the corporate Defendant's insurer, endorsed the drafts of payment, and received credit for his medical expenses with full knowledge of both the source and purpose of these advances. These payments were made during the two and one-half year lapse between the date of injury and date of verdict, thereby undoubtedly sparing Plaintiff the economic pressure which otherwise may have caused

him to settle out of court to his disadvantage. Even if Plaintiff had received no judgment for his claim, he would have benefited to the extent of the payments received in advance.

We find unavailing the argument that the same insurer, in the absence of conduct amounting to waiver or fraud, should pay to the same person the same elements of damage again, merely because the insurer failed to get that person to sign a receipt evidencing an agreement to reduce possible future liability. We agree with the Supreme Court of South Carolina:

> "The nonexistence of a receipt delineating the obvious desire to credit the payment against any future liability secured on the same claim is without legal significance." *Russell v. Ashe Brick Company*, 267 S.C. 640, 230 S.E.2d 814, 815 (S.C. 1976).

*Keating*, 428 So. 2d at 626-27.

██ ██ We agree with the rationale put forward in these cases. In addition, we are persuaded by the reasoning of one commentator for *American Law Reports, Third*, who has said that advance payment arrangements "have been designed to avoid criticisms which have been leveled at the liability insurance system on the ground that the injured party is normally in no financial position to await the outcome of a trial which might be long delayed and that therefore liability insurers are in a position to exert leverage in forcing a settlement more favorable than might otherwise be available because of the pressure of the injured party's financial necessities." W.E. Shipley, Annotation, *Effect of Advance Payment by Tortfeasor's Liability Insurer to Injured Claimant*, 25 A.L.R. 3d 1091 (1969). Without question, the law favors the amicable settlement of controversies, and because of this, it is the duty of the courts to encourage parties to reach a compromise. *See Burke v. Downing Co.*, 198 Ark. 405, 129 S.W.2d 946 (1939). Because it appears to us that all of this is precisely what Columbia Insurance on behalf of Adams Trucking was attempting to do in this case, it should not be penalized for this practice. Moreover, should this court do otherwise, a double recovery could well be the result. This court has often expressed its disapproval of double recoveries. *See, e.g., Almond v. Cigna Property and Cas. Ins. Co.*, 322 Ark. 268, 908 S.W.2d 93 (1995). We hold that credit for some of the advances made to Douglas by Columbia Insurance should be allowed.

■■ Douglas also argues that the payments from Columbia Insurance constituted payments from a third-party collateral source and, thus, could not be credited against damages awarded. This point has no merit. This Court has defined the "collateral source rule" as a "general rule that 'recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result.' " *Bell v. Estate of Bell*, 318 Ark. 483, 490, 885 S.W.2d 877, 880 (1994) (quoting *Green Forest Pub. Schools v. Herrington*, 287 Ark. 43, 49, 696 S.W.2d 714, 718 (1985) (quoting *Amos, Adm'x v. Stroud & Salmon*, 252 Ark. 1100, 482 S.W.2d 592 (1972)). However, for the collateral source rule to pertain, the third-party payment must be wholly independent of the tortfeasor. *Overton v. United States*, 619 F.2d 1299 (8th Cir. 1980); *Black's Law Dictionary* 256 (7th ed. 1999); 22 AM. JUR. 2D *Damages* § 566 (1988). That certainly is not the case in the matter before us. Columbia Insurance, the source of the payments, was the liability carrier for the tortfeasor and, as a result, was not wholly independent. We conclude that under such circumstances, the collateral source rule does not apply.

■ Douglas further maintains that Columbia Insurance's advance payments were voluntarily paid, and, because of this, a credit for those payments against the judgment amount should not be allowed. In *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.*, 328 Ark. 688, 946 S.W.2d 930 (1997), this court noted that in its past application of the voluntary payment rule, we said: "When one pays money on demand that is not legally enforceable, the payment is deemed voluntary. Absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered." *TB of Blytheville*, 328 Ark. at 693-94, 946 S.W.2d at 932 (quoting *Boswell v. Gillett*, 226 Ark. 935, 940, 295 S.W.2d 758 (1956)). *See id.* In *Boswell v. Gillett, supra*, one of the appellants, a tenant-partner, sought to recover rental amounts paid to his landlord because the landlord had not repaired slight damage to the leased theater building after a fire. We made it clear in that case that the voluntary payment rule applied where the payor continued to pay full rent without demanding the repairs.

■ In the case before us, the insurer did pay Loye Douglas advances and there was no agreement that the insurer would receive full credit for doing so. Nevertheless, it cannot be said that Columbia Insurance had no legal obligation to make such advance payments based on its liability. It is clear from the outset that the liability carrier was paying advances against future settlement or any damage award resulting from the liability of Adams Trucking to

mitigate such damages. And Douglas, without question, considered the purpose of the advance payments to be exactly that. The voluntary payment rule simply does not apply to the facts of this case.

## II. Extent of Offset

There still remains the question that even if an offset is permissible, what should the amount of the offset be? As already mentioned in this opinion, at a pretrial conference, the circuit court was persuaded that a special verdict form should be submitted to the jury in order to have verdicts reached on the various elements of damage. That was done. The purpose of the special verdicts was to facilitate a matching between advance payments and specific elements of damage awarded.

With the special verdict form, it is clear what the jury awarded as elements of damage. We must now ascertain what the advance payments from Columbia Insurance were intended to cover. We turn to the testimony of Loye Douglas at the posttrial hearing on this issue. Douglas described a meeting with the adjuster for Columbia Insurance where he bemoaned the fact that he would be unable to run his chicken farm for a period of time. The adjuster replied that that would not be a problem, which Douglas took to mean that "lost income" would be provided. The adjuster told him to go to the company that purchased his chickens and get an estimate for gross income that he would have earned in the next eight months. The adjuster also sought to determine from Douglas what expenses for operating the chicken houses, such as butane, electricity, and feed lids, would come out of that gross income figure. After the income estimates were set, the adjuster delivered a check to Douglas at about the same time each month. Douglas did not sign receipts or an offset agreement relating to these payments. At the same time, he testified that he did not expect to be paid twice.

It is clear to this court that the payments made by Columbia Insurance to Douglas over the nine-month period in the total amount of $63,111.33 were for lost income and that Douglas considered them as such. The payments for which we hold a credit should be allowed correspond to the jury's award of $40,000 for lost earnings and profits. Hence, there is no balance due from Adams Trucking for this element of damage.

Loye Douglas also testified that Columbia Insurance paid his hospital and medical bills directly to the providers. The amount of these payments, as stipulated to by both parties, was $18,098.24. This corresponds to the jury award for medical expenses of $19,000, leaving an unpaid balance of $901.76. Douglas further testified that the carrier paid him the Blue Book value for the tractor and bought him a new mower, all of which totaled $18,625, as stipulated to by the parties. The jury awarded him $19,000 for personal property damages, leaving a balance due of $375.

■ The principal sum against which we do not believe an offset should apply is the $100,000 awarded for pain and suffering. Because it is obvious to us that the advance payments were earmarked for lost income and that the other payments went to medical expenses and property losses, we see no basis for concluding that a credit was contemplated between the parties for pain and suffering or that a double recovery resulted from the jury verdict. Indeed, the parties could not agree on a settlement figure which, no doubt, encompassed some award for pain and suffering. It would have been an easy matter for Columbia Insurance to have required signed receipts or a written agreement relating to all advance payments, stating that the payments would be a credit against *any and all* settlement amount or judgment. This was not done. We further decline to affirm an offset for the $8,900 paid by Columbia Insurance to reimburse Loye Douglas for hired help, as we conclude that this advance does not correspond to any of the jury's special verdicts.

■ In sum, we hold that Adams Trucking is not entitled to a credit or offset for all funds paid by its carrier but only for those amounts paid which specifically relate to medical expenses, property losses, and lost income, as awarded by the jury. This leaves Adams Trucking owing Mr. Douglas $100,000 for pain and suffering plus the differences between the amounts paid for medical expenses and property loss and the jury verdicts. The total amount owed by Adams Trucking is $101,276.76.

Though we affirm in part with respect to the grant of an offset, we reverse and remand for entry of a judgment consistent with this opinion.