The Honorable Curren Everett State Representative 9600 Highway 9 South Salem, Arkansas 72576-9159
Dear Representative Everett:
I am writing in response to your request for my opinion on three questions I will paraphrase as follows:
 1. Since the Cherokee Village Improvement District erroneously paid property taxes on public properties it acquired as a result of foreclosure proceedings, were the taxes assessed in error?
 2. Is there any provision under Arkansas law that provides for a refund of the taxes paid under these circumstances?
 3. If the answer to question 2 is "yes," is there any provision under Arkansas law that would allow the counties and districts to negotiate a settlement as to the amount of any refund that is owed?
You report that you have posed these questions on behalf of the Sharp County Judge and the Sharp County Assessor. By way of background, you have offered the following:
 The Cherokee Village Improvement District acquired properties through the foreclosure process provided for under Arkansas Code § 14-94-122. Under Pulaski County v. Carriage Creek Property Owners Improvement Dist. No. 639, 319 Ark. 12, 888 S.W.2d 652 (1994), real property acquired and held by an improvement district as a result of foreclosure for failure to pay improvement district *Page 2 
assessments is exempt from real property taxes as public property used exclusively for public purposes.
 The Cherokee Village Improvement District erroneously paid property taxes on these properties and is requesting an Attorney General Opinion on whether it is entitled to a refund of the erroneously assessed taxes.
RESPONSE
Your first and second questions presuppose that the taxes were "erroneously paid." The question of whether this error would support the District's claim for a refund is somewhat problematic. I cannot answer the factual question of whether the tax books and related records on their face reflect the error — a condition that appears to be required under A.C.A. § 26-35-901. On the other hand, this statute further anticipates that a claimant seeking a refund might establish his entitlement upon "satisfactory proof being adduced to the county court" that an error exists. Legislative clarification is warranted regarding what "related records" might be adduced to establish that an error in assessment has occurred. With respect to your third question, assuming, as appears to be the case, that the District's entitlement to a refund is a matter of good-faith dispute, there would not appear to be any bar to the District and the county compromising the District's unliquidated claim.
Question 1: Since the Cherokee VillageImprovement District erroneously paid property taxes onpublic properties it acquired as a result of foreclosureproceedings, were the taxes assessed in error?
As reflected in your statement of background facts, A.C.A. § 14-94-122 (Repl. 2003) indeed establishes a procedure whereby an improvement district formed under the provisions of the referenced chapter may foreclose on district properties that are delinquent in the payment of district assessments. I am not, however, a finder of fact in my capacity as an issuer of formal opinions, and I am consequently unable to test your representations that the Cherokee Village Improvement District (the "District") was properly formed, that it availed itself in due manner of the foreclosure option set forth in the Code and that it erroneously paid property taxes on foreclosed properties. *Page 3 
Working from an assumption that the District indeed properly foreclosed on the delinquent properties, I agree with your suggestion that the District might, under appropriate circumstances, be entitled to a tax exemption on the property under principles set forth in Pulaski County v. Carriage Creek Property OwnersImprovement Dist. No. 639.[1] I cannot fully accept your summary of this case as holding that "real property acquired and held by an improvement district as a result of foreclosure for failure to pay improvement district assessments is exempt from real property taxes as public property used exclusively for public purposes." In Carriage Creek, the court did not rule that foreclosed property held by an improvement district will invariably be exempt from property taxation. Rather, although the court acknowledged that foreclosed land held by an improvement district might ipso facto be classified as "public," the court went on to make clear that any tax exemption would turn on the district's devoting the land to a "public purpose."[2]
In addressing the latter prong of this test, the court invoked as follows a precedent involving the taxability of foreclosed levee-district property:
 In Robinson v. Indiana Ark. Lbr. Mfg. Co., 128 Ark. 550, 194 S.W. 870 (1917), an action was instituted against a lumber company to quiet title to certain land. The lumber company's claim to the land depended upon its having paid taxes for more than seven years under color of title. During some of that time the land had been held by the St. Francis Levee District. The Chancellor held in favor of the plaintiff. We reversed, holding that no taxes had accrued during the time the land was held by the Levee District. We distinguished Ft. Smith School Dist. v. Howe, supra, [3] and said:
 "There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court *Page 4 
has recognized the difference between the actual use of the property and the use of the income."
 After pointing out that the Levee District had obtained the lands through a foreclosure for failure to pay the levee taxes due to the Levee District, we said:
 "The levee district only held the lands that it acquired at levee tax sale until it was practical to dispose of them again. They were not held for any purpose of gain or as income producing property.[4] When sold, the proceeds took the place of the levee taxes, for the enforcement of which and the expenses incident thereto, they were sold, and in this way we think the lands were directly and immediately used exclusively for public purposes within the meaning of the Constitution, [5] and were not subject to taxation."[6] *Page 5 
Extrapolating from these principles, two things appear clear: first, that foreclosed property held by an improvement district must be held for a public purpose in order to trigger the exemption from taxation; and, secondly, that holding the property solely for the purpose of reselling it as expeditiously as possible in order to satisfy a delinquent tax obligation qualifies as a public purpose, thus triggering the tax exemption. Only if both of these conditions were met could I concur in your conclusion that the District property was erroneously assessed. Testing these conditions is a task to be undertaken by a trier of fact.
Question 2: Is there any provision underArkansas law that provides for a refund of the taxes paid underthese circumstances?
Again, not being a finder of fact, I am unable to determine what circumstances in fact have given rise to your. Accordingly, I can do no more than set forth certain general principles of law that might apply.
As discussed immediately below, even if both prongs of the test set forth in my previous paragraph were met, a question would remain whether it was apparent on the face of the tax books and "related records" that an error of the sort referenced in the statute has occurred.[7] I am not situated to determine whether the pertinent books and records might reflect, for instance, that a public entity like the District is indeed holding property for resale to defray a delinquent-tax obligation — a condition that would apparently need to be met in order to render the property exempt from taxation while in the District's hands.
The statute at issue, A.C.A. § 26-35-901 (Supp. 2009), provides as follows:
 (a)(1) When any person has paid taxes on any real property or personal property, erroneously assessed, as defined and described in § 26-28-111(c), upon satisfactory proof being adduced to the county court of this fact, the county court shall make an order directed to the county treasurer refunding to the person the amount of tax so erroneously assessed and paid.
 (2) All erroneous assessment claims for property tax refunds shall be made within three (3) years from the date the taxes were paid. *Page 6 
 (b) The general fund of the county shall be reimbursed by transfer to it from funds of the respective taxing units, and the amount contributed by each taxing unit shall be the amount of the erroneous payment received by the taxing unit.
With respect to determining what would amount to an "erroneous assessment" under this statute, the referenced A.C.A. § 26-28-111 (Repl. 1997) provides in pertinent part:
 (a) When, after the tax books have been delivered to the collector, it is ascertained that there is an error in the real or personal property tax books, the error shall be corrected in the following manner:
 (1)(A) When the county assessor discovers an error in the real property tax books or any error is brought to the attention of the assessor by any person, the assessor shall cause the error to be corrected by completing the following pre-numbered form in triplicate, indicating thereon the correction to be made. . . .
 * * * (c) The provisions of this section shall be applicable only to the correction of actual and obvious errors on the tax books and related records, with such errors being restricted to extension errors, erroneous property descriptions, classifications, or listings, and shall not be utilized to make any change in the valuation of any real or personal property as shown on the tax books and related records other than a change in valuation necessitated by the correction of actual and obvious errors as provided in this section. In no case shall any reduction in the valuation of any real or personal property be made, except such as shall have been ordered by the county board of equalization, the county court, the circuit court, or the Supreme Court, or be caused by the correction of actual and obvious errors as provided in this section.
(Emphasis added.) *Page 7 
Read together, these two statutes indicate that if a claimant, within three years of paying a property tax, produces "satisfactory proof" that the assessment involved an "actual and obvious error" as defined in A.C.A. § 26-28-111(c), the county court must direct the treasurer to reimburse the claimant for the erroneously assessed tax. As noted above, the errors that will support such a refund claim are "restricted to extension errors, erroneous property descriptions, classifications, or listings." In the event a claimant establishes the occurrence of such an error, "a change in valuation necessitated by the correction" will be warranted.[8]
Assuming, then, that the foreclosed property owned by the District was indeed erroneously assessed, the question would be whether the error fell within the restricted group discussed in my previous paragraph. Neither the Code, the case law nor any prior opinion has addressed the issue of what an error in "classification" or "listing" might be. However, both of these terms would logically appear to include the mischaracterization of exempt public property devoted to a public purpose as taxable property. That said, the question remains what "satisfactory proof" might be adduced to establish that such property has been wrongly designated for taxation purposes.
In this regard, § 26-35-901(a)(1) might be read as being somewhat ambiguous in providing, on the one hand, that a claimant can establish his claim to a refund by adducing "satisfactory proof" — a term that might suggest that the county court could base its ruling upon the taking of evidence — while at the same time *Page 8 
providing, through A.C.A. § 26-28-111(c), that only "obvious errors on the face of the tax books and related records" will support granting a refund. The potential tension between these two provisions appears particularly significant in this case because establishing that forfeited property is being put to a public purpose — a precondition for any claim to a refund — may well entail taking evidence to that effect. If so, there would not appear to be any "obvious errors on the face of the tax books and related records," thus quite possibly precluding any refund. On the other hand, it may be that "the tax books and related records" themselves reflect that forfeited property is simply being held for resale — a condition that the case law suggests would meet the public-purpose prong. The suggestion that a petitioner may adduce "satisfactory proof" in support of his claim, considered in conjunction with the fact that the statutory term "related records" is disconcertingly vague, strongly suggests that legislative or judicial clarification is warranted. In any event, only a finder of fact could determine in each particular instance whether the somewhat amorphous category of "tax books and related records" includes sufficient documentation to establish whether the property is both public and being used for a public purpose.
Question 3: If the answer to question 2 is "yes," is there anyprovision under Arkansas law that would allow the counties anddistricts to negotiate a settlement as to the amount of any refundthat is owed?
Although the Arkansas Code contains no express provision authorizing the compromise of disputed claims, I have found no provision of law that would preclude such a negotiation.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] 319 Ark. 12, 888 S.W.2d 652 (1994).
[2] Id. at 14-15.
[3] 62 Ark. 481, 37 S.W. 717 (1896).
[4] This consideration prompted the court to distinguish the case of School District of Fort Smith v. Howe,62 Ark. 481, 37 S.W. 717 (1896), in which property belonging to a school district was deemed taxable because it "was purchased and held for sale or rent with the resulting funds going to public purposes." 319 Ark. at 14. The court in Carriage Creek
thus reaffirmed that although holding public property in a proprietary capacity in order to generate income — whether by sale, rent or otherwise — may be described as serving a public purpose, that purpose will be too attenuated to support granting a tax exemption. By contrast, when, as in Carriage House, a sale is designed only to recoup a tax deficiency, the public-purpose doctrine will be deemed satisfied.
The court in Carriage House did not directly address how a taxing authority should treat any surplus revenues realized above the tax obligation in a tax sale. It may not have felt obliged to address this issue in light of the following affidavit testimony of a district commissioner:
 The Lots are currently held by the District in its governmental capacity pending sale of the Lots to recover delinquent taxes and penalties. The District is not leasing the lots or otherwise utilizing the Lots in any proprietary manner.
319 Ark. at 15. The court did not address the possibility that the district might realize a "proprietary" benefit if the proceeds of a tax sale exceeded the tax obligation.
[5] The constitutional provision at issue is contained in Ark. Const. art. 16, § 5(b), which provides that public property held for a public purpose is exempt from taxation. See City ofLittle Rock v. McIntosh,319 Ark. 423, 426, 892 S.W.2d 462 (1995) (discussing this provision).
[6] 319 Ark. At 14-15.
[7] This latter possibility raises the question of what might constitute "related records" as that term is used in the statute discussed immediately below.
[8] This entitlement to a refund of taxes erroneously paid marks a statutory divergence from the common-law "voluntary payment" rule, which provides that any tax paid voluntarily and not under protest cannot be recovered. See, e.g., Douglas v. Adams TruckingCo., 345 Ark. 203, 212, 46 S.W.3d 512 (2001); City of LittleRock v. Cash, 277 Ark. 494, 503-04, 644 S.W.2d 229 (1982) (both generally discussing this doctrine); Op. Att'y Gen. No. 89-164 (same). See also ACW, Inc. v. Weiss,329 Ark. 302, 3116, 947 S. W.2d 770 (1997) (Brown, J., concurring in part, dissenting in part) (noting that in light of the enactment of a refund statute, the voluntary-payment rule "is of no consequence").
In several instances, courts have relied on the voluntary-payment rule to deny a refund despite the fact that a tax was erroneously assessed. See Omega Tube ConduitCorp. v. Maples,312 Ark. 489, 497-98, 850 S.W.2d 317 (1993) (holding that mistakenly paid taxes on manufacturing inventory were not subject to a refund) and Arysta Lifescience North America, LLC v. Foreman, Independence County Circuit Court No. 2009-364-4 (holding that the plaintiff itself assessed the manufacturing inventory and that the error "cannot be determined from looking at the tax books themselves"). Only the latter of these cases discussed the possible application of A.C.A. §§ 26-35-901 and 26-28-111. In one other case,Avaya, Inc. v. Ward, Pulaski County Circuit Court No. 2007-009779, the court denied the county's motion to dismiss based on its conclusion that the plaintiff taxpayer had "alleged facts sufficient to state a cause of action for refund of erroneously assessed and consequent overpayment of property taxes." This case was apparently settled following the issuance of this order.