**Rosemary Posey BOYETT and Roy Boyett,**

v.

**KEENE CORPORATION, et al.**

**No. 1:92 CV 292.**

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 8, 1993.

---

2. De minimis non curat lex. (The law does not concern itself with trifles.)

206

Scott R. Bickford, New Orleans, LA, for plaintiffs.

James Hayes Powers, Houston, TX, Walter Watkins, Jackson, MS, John R. Santa Cruz, New Orleans, LA, for defendants.

## MEMORANDUM OPINION

JUSTICE, District Judge.

### I. Introduction

The plaintiff, Rosemary Posey Boyett, obtained a jury verdict against the defendant, Keene Corporation, in the amount of $226,466.09,[1] for the death of her husband, Roy Boyett. The decedent was a marine engineer whose death was caused by mesothelioma.

Keene claims an offset against the verdict for amounts received in settlement by the plaintiff from the shipowners[2] and other asbestos manufacturers. The Shipowners paid a total of $312,500.00 in settlement of the plaintiff's claims, and the manufacturers paid $97,000.00.[3] Since the plaintiff has already received an amount in excess of the jury verdict in settlements, Keene contends that plaintiff is entitled to nothing from it.

One of the Shipowners, States Marine Lines, seeks indemnification from Keene for $230,625, which represents the portion of its settlement attributable to Boyett's service on the three vessels which were fitted with Keene insulation, specifically, the Hoosier

---

**1.** The jury awarded $90,000.00 for Roy Boyett's pain and suffering. The parties had stipulated that medical costs amounted to roughly $32,000.00 and lost wages amounted to approximately $103,000.00.

**2.** The settling shipowners are Alcoa Steamship Company, Inc.; American Foreign Steamship Corporation; Isco, Inc., individually and as successor to States Marine Lines, Inc.; and Lykes Brothers Steamship Co., Inc. ("Shipowners").

**3.** The Shipowners' release does not admit liability. Further, it includes a reservation of rights against Keene.

State, the Keystone State, and the Wolverine State.[4]

## II. Factual Background and Findings

Roy Boyett, a former marine engineer, died of malignant mesothelioma on August 23, 1990. He had been diagnosed with defuse malignant mesothelioma on or about July 6, 1990. The parties stipulated that Boyett's exposure to asbestos while a merchant marine was a significant contributing factor to his contraction of the disease.

At the time of his death, Boyett was sixty-five years old, and was employed as a marine surveyor, earning approximately $70,000 per year. He expected to work several more years in this capacity.

Between 1955 and 1967, Boyett served in the engine department of the Hoosier State for 2,159 days, the Keystone State for 422 days, and the Wolverine State for 507 days. These three ships were built for the United States Maritime Commission in 1945 at Sun Shipbuilding and Dry Dock Company in Pennsylvania. The ships were built according to United States government specifications, and, after States Marine Lines purchased the ships, they were operated in conformity with United States Coast Guard regulations.[5]

The insulation for these ships was provided by Philadelphia Asbestos Company (Pacor), a distributor of 85% Magnesia products manufactured by Ehret. Ehret's insulation products contained asbestos. Although the original insulation aboard the three ships was repaired from time to time, most of the Ehret insulation installed during construction remained in place throughout Boyett's service.

The three ships were owned by States Marine Lines for the entirety of Boyett's marine career. During normal shipping operations, asbestos from pipe-covering, block insulation, and cement was released into the ambient air of the ships. Testimony from numerous witnesses at trial, including the videotaped deposition testimony of Boyett, established that Boyett had been exposed to asbestos daily during his employment on these three ships.

Manufacturers of asbestos-containing insulation products began placing warnings on packages of insulation sold to the shipping industry in about 1965. The warnings stated that use of the insulation products may be hazardous to the user's health. Keene gave no other warnings about the hazards of asbestos exposure to the Shipowners or maritime trade associations. There was extensive testimony by members of the shipping industry, including naval architect John Boylston and former Marine Engineers Beneficial Association president Jesse Mayo Calhoon (by deposition), that the industry did not learn about the hazards of asbestos exposure to crew members until approximately 1978, years after Boyett's exposure to asbestos on board the three ships.

█ In the absence of any convincing evidence that the Shipowners were aware of the dangers of asbestos-containing insulation materials to crew members, or that the Shipowners should have been aware of the dangers, it is found that the Shipowners were not negligent in any respect, and that the Shipowners' actions or inactions were not the proximate cause of Boyett's injuries.

## III. Analysis

### A. Offset of Settlement Amounts from Plaintiff's Award

Plaintiff brought suit against Keene on theories of strict liability in tort for defective products and negligent failure to warn of the dangers of asbestos-containing insulation products. The jury verdict against Keene provided compensation for Boyett's pain and suffering; his lost wages up until the time of his death; and his medical and funeral expenses. Plaintiff's settlement with the Shipowners released multiple claims in admiralty for loss of society; punitive damages; Boy-

---

**4.** The insulation was manufactured by Ehret Magnesia Manufacturing Company ("Ehret"), Keene's corporate predecessor. For the purposes of this litigation, Keene has assumed the liability of Ehret.

**5.** The first time the U.S. Coast Guard issued any regulations with respect to asbestos was in May 1980.

ett's pain and suffering, medical expenses and funeral expenses; maintenance and cure; and plaintiff's loss of support.[6]

■ Because Boyett was a seaman, plaintiff's claims arose pursuant to maritime law. *See East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (recognizing products liability concepts as part of general maritime law). Therefore, the issues of offset and indemnification are governed by general maritime law. *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830 n. 7 (5th Cir.1992); *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA,* 761 F.2d 229, 235 (5th Cir.1985).

■ The general principle in cases where offset is claimed is that a plaintiff is entitled to only one recovery for the injuries suffered. *See Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.,* 797 F.2d 227, 233 (5th Cir.1986). Where the jury award represents the entire amount of plaintiff's loss, a reduction must be made for the amounts received from the settling defendant. *Strachan Shipping Co. v. Nash,* 782 F.2d 513, 520 (5th Cir.1986). In other words, amounts recovered from a settling defendant should be applied as a credit against the amount recovered by the plaintiff from a non-settling defendant, provided that both the settlement and the judgment represent common damages. *Howard v. General Cable Corp.,* 674 F.2d 351, 358 (5th Cir.1982). *See U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1236 (10th Cir.1988). Thus, this so-called "one satisfaction" rule applies only where the defendants' conduct resulted in a single injury. *Id.* at 1236; *Howard,* 674 F.2d at 358.

■ By contrast, where two or more defendants are responsible for separate injuries, an amount received in settlement from one defendant for one of the injuries may *not* be used to reduce the liability of the other defendant for the other injuries. *See Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1508 (11th Cir.1985) (amount received

by spouse for loss of consortium should not be offset against jury verdict, because the damages sustained by a spouse are exclusive of those suffered by her husband); *Goad v. Macon County, Tenn.,* 730 F.Supp. 1425, 1432 (M.D.Tenn.1989) (where claims against the settling defendants were separate and distinct from those against the trial defendant, the losing trial defendant is not entitled to a set-off); *Hoffman v. McNamara,* 688 F.Supp. 830, 831 (D.Conn.1988) (defendant does not get a setoff where claims against settling joint tortfeasors were separate and distinct from claims against defendant). The tortfeasor who chooses to go to trial can be held liable for no more, and no less, than its own share of the judgment. It remains liable for the full amount of damages its own negligence caused. *Diggs v. Hood,* 772 F.2d 190, 196 (5th Cir.1985).

■ There has been no showing that the amounts recovered in settlement from the Shipowners represented compensation for damages which were common with the damages imposed by the jury against Keene. Plaintiff's complaint against the Shipowners demanded relief for the injuries of both plaintiff and Boyett under general maritime law and the Jones Act, and asserted a claim for punitive damages. The settlement agreement provided that the Shipowners were released from any and all liability under the Jones Act, maritime law, unseaworthiness, and negligence. Plaintiff received compensation under the settlement agreement for maintenance and cure, lost wages, loss of support, loss of society, medical expenses, and any and all other damages. Plaintiff recovered damages from Keene only for Boyett's pain and suffering, his lost wages up to the time of his death, and his medical and funeral expenses. Keene has not been required to requite Boyett's estate for maintenance and cure, nor has it been required to compensate plaintiff for her loss of support, loss of society, or punitive damages.

---

6. Plaintiff did not pursue her claims for loss of society or support, or for punitive damages, against Keene. By the time of trial, but after plaintiff's settlement with the Shipowners, the

United States Supreme Court handed down *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), which precluded these claims in the maritime context.

■ The burden of proving that the settlement and the judgment represented common damages, such that the plaintiff would receive a double recovery if no offset were allowed, rests on the party seeking a credit; that is, Keene must prove that the plaintiff has been made whole by the settlement. *See Howard v. General Cable Corp.* 674 F.2d 351, 358 (5th Cir.1982); *Cates v. United States,* 451 F.2d 411, 417–18 (5th Cir.1971). *See also Phillips v. Liberty Mut. Ins. Co.,* 813 F.2d 1173, 1176 (11th Cir.1987). *But see Touche Ross,* 854 F.2d at 1235, 1261–62 (once the defendant proves that plaintiff settled claims for which the defendant was found liable at trial, and that there may be a double recovery, the burden shifts to the plaintiff to prove that, under the terms of the agreement, the settlement did not represent common damages).

A seaman may well have multiple causes of action arising out of the same injury-causing event: He may have an action against his employer for maintenance and cure, which is quasi-contractual and arises inferentially out of the relation of ship and seaman. He may have a right of indemnity against the owner of the vessel for the unseaworthiness of the vessel or for Jones Act negligence. He may have a right to recover against a third party whose negligence was the proximate cause of his injury. In each of these cases the elements of damages may not be equivalent. In other words, while some of the elements of damages may overlap, a payment under the obligations to provide maintenance and cure, for example, will not necessarily satisfy all of the elements of damages allowable under the right to recover for unseaworthiness of the vessel.... [U]nless it is definitely shown that the elements compensated for in a previous ... settlement ... have actually been included in the present suit, the seaman is not precluded from recovering in the present suit. The burden is on the one claiming duplication to show that the damages assessed against him have in fact and in actuality been previously covered in a prior settlement, payment, or judgment.

*Cates,* 451 F.2d at 417–18 n. 20.

Placing the burden on the defendant to prove that plaintiff has been made whole is consistent with the policy of placing the risk of uncertainty on the wrongdoer, not the injured party. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 270, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979); *Barnes v. United States,* 685 F.2d 66, 69 (3d Cir.1982). Keene failed to establish that plaintiff would receive a double recovery for the same injuries compensated by the Shipowners if offset were not allowed.

■ Even if Keene had proven duplication, credit would *not* be permitted for any award of damages based on a claim for which the defendants were not jointly and severally liable. *Simpson Timber Co. v. Parks,* 390 F.2d 353, 357 (9th Cir.), *cert. denied,* 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968). *See Dobson v. Camden,* 725 F.2d 1003, 1005 (5th Cir.1984) (where there is no joint and several liability, there can be no offset for settlements). *See also Touche Ross,* 854 F.2d at 1235 n. 17 (credit not permitted for any award of damages based on a claim for which the defendants were not jointly and severally liable); *Phillips,* 813 F.2d at 1176 (settlement amounts may ordinarily be set off against any judgment obtained against the other joint tortfeasors); *Dykes v. Raymark Industries, Inc.,* 801 F.2d 810 (6th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987) (implicitly recognizing that a finding of joint liability is a prerequisite to setoff); *Hendrix,* 776 F.2d at 1508 (under Georgia law, there may be an offset for settlement amounts received from joint tortfeasors for an indivisible injury); *Shapiro, Bernstein & Co. v. Goody,* 248 F.2d 260, 267 (2d Cir.1957), *cert. denied,* 355 U.S. 952, 78 S.Ct. 536, 2 L.Ed.2d 529 (1958) (to determine the impact of settlement on the plaintiff's award, the court must first determine whether liability of the defendants is joint); *Yost v. American Overseas Marine Corp.,* 798 F.Supp. 313, 318 (E.D.Va.1992) (where tortfeasors are jointly liable for the entire harm, a payment by one diminishes the claim against the other joint tortfeasors); *Hill v. Budget Finance & Thrift Co.,* 383 S.W.2d 79, 81 (Tex.Civ.App.—Dallas 1964, no writ hist.) (joint tortfeasor is entitled to credit if it is able to show that the same injury was com-

pensated by a payment made by another joint tortfeasor).[7]

 Defendants are jointly liable when the tortious conduct of each combines as "a legal cause of a single and indivisible harm to the injured party." *Yost,* 798 F.Supp. at 318 (E.D.Va.1992) (citing Restatement (Second) of Torts § 875). *See Diggs v. Hood,* 772 F.2d 190, 193 (5th Cir.1985) (general rule of joint and several liability under Louisiana law). Where joint liability is found, the defendants are liable to the injured party for the entire harm. *Id.* The general maritime law recognizes the concept of joint liability, and it has been applied most frequently in collision cases. *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1428 (5th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

Liability to a seaman under an unseaworthiness theory or a Jones Act claim is a form of liability which is not based on traditional notions of fault, and is of a wholly different character than liability for common law negligence. *See Johnson v. Offshore Exp., Inc.,* 845 F.2d 1347 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).[8] Thus, the shipowner's breach of the duty to provide a safe place to work does not make the shipowner a joint tortfeasor with a negligent manufacturer. *Tri–State Oil Indus., Inc. v. Delta Marine Drilling Co.,* 410 F.2d 178, 185 (5th Cir.1969); *Simpson Timber Co.,* 390 F.2d at 357; *States S.S. Co. v. Rothschild Intern. Stevedoring Co.,* 205 F.2d

253, 255 (9th Cir.1953).[9] Where a shipowner is not found negligent, but is nevertheless subject to suit on an unseaworthiness theory (which does not require a showing of fault), the shipowner is not a joint tortfeasor with the negligent supplier or manufacturer of defective equipment. *Cooper Stevedoring Company, Inc. v. Fritz Kopke, Inc.,* 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694 (1974); *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 89, 66 S.Ct. 872, 874, 90 L.Ed. 1099 (1946). *See States S.S. Co.,* 205 F.2d at 255 (a shipowner and negligent stevedoring company do not present a situation of contribution between joint tortfeasors, but one of full indemnity between one party who is solely at fault and another who is liable without fault as the result of the other's acts). *See also Yost,* 798 F.Supp. at 318–19 (offset allowed where shipowner and plaintiff's employer, a ship maintenance company, were found jointly and severally liable for negligence, as both were aware of the hazard which caused plaintiff's injuries).

 In the admiralty context, defendants are frequently found jointly and severally liable when their negligence combines to cause ship collisions. However, in the present case, no indivisible act or injury has been shown. It cannot be said that an indivisible injury was caused by the Shipowners' act of providing otherwise seaworthy ships, insulated with asbestos-containing products, and Keene's tortious conduct of supplying and installing defective and dangerous products, without warning of the dangers of those

**7.** Similarly, credit is not allowed on settlement amounts representing punitive damages, which are individual in nature. *Touche Ross,* 854 F.2d at 1235 n. 17. *See Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801, 805 (5th Cir.1983); *Howard v. General Cable Corp.,* 674 F.2d 351, 358 (5th Cir.1982); *Goad v. Macon County, Tenn.,* 730 F.Supp. 1425, 1426 (M.D.Tenn.1989).

**8.** In contrast to the standard of liability for common law negligence, a shipowner's duty to furnish a seaworthy ship is absolute, and does not require a showing that the shipowner had notice of the dangerous condition. *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 330 (5th Cir.1977). Further, the Fifth Circuit has described a seaman's burden of showing causation to recover on a Jones Act claim as "feather-weight." *Smith v. Trans–World Drilling Co.,* 772 F.2d 157, 162 (5th Cir.1985). Evidence of the "slightest" negli-

gence is sufficient to sustain a finding of Jones Act liability. *Theriot v. J. Ray McDermott & Co., Inc.,* 742 F.2d 877, 881 (5th Cir.1984); *Davis,* 549 F.2d at 329.

**9.** It is found that the Shipowners and Keene are not joint tortfeasors, and that setoff of the settlement amount is therefore not allowed; hence, there is no need to reach the issue of whether the pro rata or pro tanto method of calculating offset applies. *Compare Hernandez v. M/V Rajaan,* 841 F.2d 582 (5th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988) *with Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246 (5th Cir.1979) *and Hardy v. Gulf Oil Corp.,* 949 F.2d 826 (5th Cir.1992). However, it is noted that the recently decided case, *McDermott, Inc. v. Iron,* 979 F.2d 1068 (5th Cir.1992), resolves the split of authority within the Fifth Circuit in favor of the pro tanto, or dollar for dollar, approach.

products. Moreover, it cannot be said that Keene's tortious conduct combined with the Shipowner's non-negligent action or inaction to cause Roy Boyett's injury. Accordingly, there can be no offset from plaintiff's jury verdict.

### B. *The Shipowners' Claim for Indemnification*

Prior to trial, the Shipowners engaged in settlement negotiations with plaintiff's counsel, and ultimately agreed to recommend a $312,500.00 settlement of the claims against the Shipowners. Before doing so, counsel advised Keene of the potential settlement agreement, requesting confirmation of its reasonableness, or, in the alternative, tendering the Shipowners' defense to Keene. Shipowners received no response, and the settlement was authorized and funded. States Marine, one of the Shipowners, seeks indemnification from Keene for $230,625, which represents the portion of its settlement attributable to Boyett's service on the three ships insulated with Ehret products.

 The availability of common law indemnity under maritime law is quite limited. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir.1992). In most cases, damages should be allocated according to the respective fault of the tortfeasors. *Id.* *See United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

 Prior to the *Reliable Transfer* case, most circuits allowed indemnification of passive tortfeasors from active tortfeasors. *See Tri–State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir.1969). However, after the United States Supreme Court adopted the comparative fault system between maritime tortfeasors, the Fifth Circuit abandoned the antiquated,

awkward distinction between "active" and "passive" fault. *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493 (5th Cir.1982).[10]

*Loose*, notwithstanding, did not bar indemnification where one party is not negligent, but, instead, is held liable without fault, by operation of law.[11] *See White v. Johns–Manville Corp.*, 662 F.2d 243, 249 (4th Cir.1981); *Cities Service Co. v. Lee–Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir.1985); *Simpson Timber Co. v. Parks*, 390 F.2d 353, 357 (9th Cir.1968). Thus, where a ship is found unseaworthy *solely* because of the presence of a defective product, and not because of any negligence on the part of the shipowner, the manufacturer should bear the loss. *Hardy*, 949 F.2d at 833; *Marathon Pipe*, 761 F.2d at 236. By imposing the ultimate liability upon the negligent manufacturer, "the loss is placed upon the actor whose default caused the injury. The one best able to eliminate the risk is given the greatest incentive to do so." *Tri–State Oil*, 410 F.2d at 186.

 In the present case, the Shipowner's liability rests solely on the breach of the duty to provide a safe place to work, but the unsafe condition was created by Keene's wrongdoing. As a general principle, where a shipowner has compensated the plaintiff for his injuries, thereby discharging the manufacturer's obligation, the manufacturer cannot equitably be permitted to retain the benefit thus conferred. *Tri–State Oil*, 410 F.2d at 185.[12] *See Marathon Pipe Line*, 761 F.2d at 236 (the non-negligent shipowner is entitled to full indemnity for that portion of the harm caused by the defective product from the manufacturer of the product where the shipowner was at fault for the collision, but the use of the defective product for repairs increased the total damages).

---

**10.** In *Loose,* the Fifth Circuit recognized that the adoption of a comparative fault system abrogated the need to rely on active-passive distinctions, as comparative fault provides a method of allocating liability among joint tortfeasors in proportion to their relative fault. 670 F.2d at 501–02.

**11.** The court noted that the abrogation of the active-passive distinction did not foreclose indemnification based on vicarious liability. *Loose,* 670 F.2d at 502 n. 18. *See Marathon Pipe Line v. Drilling Rig ROWAN/ODESSA,* 761 F.2d

229, 236 (5th Cir.1985); *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 833 (5th Cir.1992).

**12.** Alternatively, it can be said that in negligently providing a defective product, Keene breached a duty owed directly to the Shipowner to exercise reasonable care to avoid the foreseeable harm of the Shipowner's liability for unseaworthiness. *Tri–State Oil,* 410 F.2d at 185 (*citing Simpson,* 390 F.2d at 355–56 n. 4).

However, contribution· or indemnification is only allowed "when two or more persons are liable to the same plaintiff *for the same injury* and one of the *joint* tortfeasors has paid more than his fair share of the common liability." *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 87–88, 101 S.Ct. 1571, 1579, 67 L.Ed.2d 750 (1981) (emphasis added). A joint tortfeasor may enforce indemnity from another joint debtor when the indemnitor has been unjustly enriched because another has discharged liability that was the indemnitor's responsibility. *Diggs,* 772 F.2d at 193. For example, in *Tri–State Oil,* 410 F.2d at 186–87, where the shipowner had been found jointly and severally liable for the injury because of its knowledge of the danger, the court held that, if the shipowner were not negligent, it would be entitled to indemnity from the installer of the defective equipment which caused the plaintiff's injury. Moreover, the shipowner's payment of the common damages would have conferred a benefit on the installer by discharging the installer's liability to the plaintiff.

Unless Shipowner's payment discharged all or part of Keene's debt, there is no debt to be repaid by Keene and therefore no liability for contribution or indemnification. *Diggs,* 772 F.2d at 197. Where, as in the present case, the defendants are not found jointly and severally liable, and they are liable to the plaintiff for separate injuries, the settling defendant is not entitled to indemnification. The Shipowners' liability for maintenance and cure, loss of support, loss of society, and punitive damages was unique to the Shipowners, and the Shipowners' payment did not reduce the amount of damages which Keene is required to pay to the plaintiff. Unlike cases where indemnification has been allowed, Keene has not been unjustly enriched because the Shipowners' payment did not discharge liability that was Keene's responsibility.[13]

13. If offset were allowed for a specified portion of the settlement which represented common damages, *i.e.,* Boyett's lost wages up to the time of his death and medical expenses, the Shipowners would have a claim against Keene for indemnification of that amount. However, there has been no evidence regarding any portion of the settlement allocated to common damages. Absent evidence of such allocation, the Shipowners, who were party to the settlement agreement, should bear the risk of uncertainty. *See Touche Ross,* 854 F.2d at 1260–61.

III. Conclusion

Plaintiff is entitled to the entire amount of the jury verdict, without offset. States Marine Lines, however, is not entitled to indemnification from Keene. A judgment to that effect will be issued concurrently with this memorandum opinion.

JUDGMENT

This action came on for trial on issues of liability and damages before the court and the jury, and the issues having been duly tried and the jury having duly rendered its verdict;

Accordingly, in accordance with the memorandum opinion issued concurrently with this judgment, it is

ORDERED, ADJUDGED, AND DECREED that judgment be awarded in favor of the plaintiff, Rosemary Boyett, in her capacity as the personal representative of the estate of Roy Boyett, and against the defendant, Keene Corporation, in the amount of Two Hundred Twenty–Six Thousand, Four Hundred Sixty–Six Dollars and Nine Cents ($226,466.09), with no setoff allowed the defendant. It is further

ORDERED, ADJUDGED, AND DECREED that the claim for indemnification and attorneys' fees of third-party plaintiff, Isco, Inc., individually and as successor to States Marine Lines, Inc., and against the defendant, Keene Corporation, be DISMISSED, with prejudice.