Evadine TURNER, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. S–11958.

Supreme Court of Alaska.

Nov. 16, 2007.

Jeffrey J. Barber, Law Offices of Steve Sims, Anchorage, for Appellant.

Scott Hendricks Leuning, Clapp Peterson Van Flein Tiemessen & Thorsness LLC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Evadine Turner sued the Municipality of Anchorage for injuries she sustained when a municipal vehicle struck her car from behind. The case was tried to a jury. Turner appeals various trial court rulings. We conclude that the court did not err in admitting into evidence expert testimony that went to causation; that it was not reversible error to reject Turner's requested jury instructions; that it was not error to deny Turner's directed verdict, JNOV, and new trial motions; and that it was not error to calculate attorney's fees from the date of the municipality's offer of judgment, because the offer was valid. We also conclude that because the municipality adequately established that a pretrial payment it made to Turner's subrogated insurer was for medical expenses covered by the jury's damages award, it was not error to grant the municipality an offset for that payment. We therefore affirm the judgment below.

## II. FACTS AND PROCEEDINGS

In July 2001 a Municipality of Anchorage vehicle rear-ended a car driven by Evadine Turner. Turner underwent treatment over the next year for a series of medical and dental problems, including headaches, neck

and back pain, flare-up of her temporal mandibular disease (TMD), loose crowns and porcelain fractures on several teeth, and a false aneurysm.

Her TMD and dental procedures are of special relevance here. In an August 14, 2001 visit with her regular physician, Dr. John Hunter, Turner complained of "loosening of dentition or left mandible." She visited Dr. Richard Bell in Portland, Oregon, in October for problems relating to her temporomandibular joint (TMJ). Turner had a prior history of TMJ problems. Dr. Bell recommended nonsurgical therapy. Turner returned to Dr. Bell on November 15, and he referred her to a prosthodontist, Dr. Catherine Lach. Turner did not see Dr. Lach, but on November 19 she visited a different prosthodontist, Dr. Nader Rassouli, of Portland, Oregon. Dr. Rassouli performed extensive reconstructive dental procedures over the next year. Dr. Rassouli's total bill exceeded $60,000. On January 4, 2002, Dr. Rassouli sent a letter to Johanna Grasso at Ward North America, the municipality's claims adjuster. The letter explained that Turner had "multiple loose crowns and bridges with porcelain fractures on several teeth with unstable occlusion" following the accident.

On May 14, 2002, Ward North America paid $4,345.08 to Turner's subrogated auto insurer, United Services Automobile Association (USAA). The payment was for subrogated expenses for these services: (1) Turner's emergency room treatment at Valley Hospital; (2) diagnostic tests of Turner's chest, spine, and head; and (3) an MRI of Turner's TMJ and X-rays ordered by Dr. Bell.

Turner sued the municipality in May 2003, alleging damages in excess of $100,000. On October 27, 2004 the municipality made a $45,000 offer of judgment under Alaska Civil Rule 68. Turner did not accept the offer, and the case was tried to a jury.

The municipality's trial brief admitted liability for the accident and disclosed that the municipality had compensated Turner for damage to her car and had reimbursed USAA (Turner's insurer) for its medical payments. The municipality also acknowledged in its closing jury argument that the accident might have been responsible for Turner's TMD flare-up. But the municipality contested causation and damages as to Turner's dental work and false aneurysm.

The jury's verdict awarded Turner $12,895 for past medical costs and $10,500 for past non-economic damages (pain and suffering). After the verdict was announced but before the jury was dismissed, Turner asked the court to require the jury to allocate past medical expenses. The court denied her motion. Turner also asked the court to consider her directed verdict motion. The court denied this motion as well.

Turner moved for a judgment notwithstanding the verdict (JNOV) and alternatively requested a new trial. The municipality moved for entry of final judgment and requested an offset for the $4,345.08 it had paid USAA. It also requested costs and attorney's fees dating from its offer of judgment, per Alaska Civil Rule 68.

Turner opposed the offset motion and argued that the offer of judgment was invalid in part because the municipality had not disclosed the USAA payment. The court denied Turner's JNOV and new trial motions and entered final judgment granting the offset, naming the municipality as the prevailing party, and granting it costs and attorney's fees. Turner moved for reconsideration and asked the court to sanction the municipality under Alaska Civil Rule 37 for failing to disclose the USAA payment. The trial court denied the sanctions motion and the reconsideration request. Turner appeals.

## III. DISCUSSION

### A. It Was Not an Abuse of Discretion To Admit Dr. Truelove's Testimony into Evidence.

A tortfeasor is liable for injuries to the victim caused by the negligent actions of third parties in rendering reasonably necessary aid.[1] Turner contends that this princi-

---

1. See RESTATEMENT (SECOND) OF TORTS § 457 (1965) (If the negligent tortfeasor "is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal

ple establishes that the testimony of the municipality's expert, Dr. Edmund Truelove, was inadmissible as irrelevant and prejudicial because its purpose and effect were to show that her prosthodontist, Dr. Rassouli, rendered negligent treatment after the accident.[2] She therefore argues that it was reversible error to admit Dr. Truelove's testimony into evidence.

■ When admissibility turns on a question of fact we review the evidentiary ruling for abuse of discretion.[3]

■ Dr. Truelove's testimony went to the disputed fact issue of whether the accident caused the conditions treated by Dr. Rassouli; his testimony was therefore relevant, satisfying Alaska Evidence Rule 402.[4] Relevant evidence may be excluded if it is unduly prejudicial, but Turner has not demonstrated that the risk of prejudice outweighed the probative value of Dr. Truelove's testimony.[5] There was no significant danger that the jury would misinterpret Dr. Truelove's testimony as accusing Dr. Rassouli of negligence because Dr. Truelove neither criticized Dr. Rassouli's care nor asserted that Dr. Rassouli had negligently treated Turner. Nor did the municipality try to use Dr. Truelove's testimony for an improper purpose; the municipality used it to make the causal argument that the dental work Dr. Rassouli performed was not required by the accident and

that his treatment was for wholly unrelated problems.[6] We therefore conclude that the trial court did not abuse its discretion by admitting the testimony into evidence.

### B. Turner Was Not Harmed by the Trial Court's Refusal To Give a Jury Instruction Based on Restatement (Second) of Torts § 457.

■ The trial court gave the jury an instruction based on Alaska Pattern Civil Jury Instruction 20.02, instructing it to compensate the plaintiff for the "reasonable expense of necessary medical care" related to the accident.[7] Turner contends that it was error not to give her suggested instruction, which was based on the Restatement (Second) of Torts § 457.[8] Turner's requested instruction would have told the jury it could compensate Turner for "[a]ggravation of the original injury resulting from the failure of others to use reasonable care in providing medical or hospital treatment of the original injury."

■ We review jury instructions de novo when a timely objection is made.[9]

Turner asserts that her suggested instruction was necessary because the jury could have understood Dr. Truelove's testimony as implying that Dr. Rassouli was negligent in his medical care. But as noted above, there

efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.").

2. *See* Alaska R. Evid. 402 ("Evidence which is not relevant is not admissible."); Alaska R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....").

3. *Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093, 1097 (Alaska 2002).

4. Alaska R. Evid. 402. Alaska Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

5. Alaska R. Evid. 403.

6. Referring to Dr. Rassouli's treatment in its final argument to the jury, the municipality's

attorney contended that "it all raises questions as to was all of that work related at all to the auto accident and I tell you that it wasn't. All of that reconstructive work had nothing to do with the accident...."

7. The relevant part of the court's instruction told the jury: "The first item of economic loss claimed by the plaintiff is the reasonable expense of necessary medical care from July 19, 2001 to January 31, 2005[and] the reasonable expense of necessary medical care reasonably probable to be received in the future."

8. As noted above, § 457 embodies the principle that a tortfeasor is liable for "any additional bodily harm resulting from normal efforts of third persons in rendering aid which the [victim's] injury reasonably requires," even if the aid is rendered in a negligent manner.

9. *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 25 (Alaska 2002).

was no significant danger the jury would draw such an inference. Neither Dr. Truelove's testimony nor the municipality's argument would have led the jury to find that Dr. Rassouli had been negligent or to think that the quality of his care had any bearing on jury issues. Furthermore, the trial court properly instructed the jury regarding the "reasonable expense of necessary medical care." It based its instruction on Alaska Pattern Civil Jury Instruction 20.02, which correctly states Alaska law regarding medical expenses. The court's instruction could not reasonably have led the jury to think that the municipality was not liable for negligent medical care Turner necessarily received as a result of the accident.

## C. The Trial Court Did Not Err in Denying Turner's Directed Verdict, JNOV, and New Trial Motions.

■ Turner asserts that because the municipality admitted that it was liable for the accident and that the accident may have caused a flare-up of Turner's TMD, there was no reasonable basis for the jury to deny recovery for Dr. Rassouli's treatment. Based on this assertion, Turner argues that it was error for the trial court to deny her motions for directed verdict, judgment notwithstanding the verdict (JNOV), or a new trial.

■ In reviewing the denial of a motion for directed verdict or JNOV, we apply an objective test to determine "whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judgment."[10] We review denial of a new trial under an abuse of discretion standard wherein we disturb the trial court's discretion only "in the most exceptional circumstances to prevent a miscarriage of justice."[11]

We are unpersuaded by Turner's argument. The municipality's concession did not

concede there was no genuine issue of disputed fact as to whether the accident was a cause of the conditions Dr. Rassouli treated. The municipality never conceded this disputed fact question. The jury could have permissibly found that the accident did not cause the conditions treated by Dr. Rassouli. The trial court therefore properly denied Turner's motions.

*Weidner v. Hibdon*,[12] on which Turner relies, does not compel a different result. *Weidner* explains that treatment may be considered reasonable when: (1) the plaintiff presents credible evidence from her treating physician that the treatment is reasonably effective and necessary, (2) other medical experts corroborate the evidence, and (3) the treatment "falls within the realm of medically accepted options."[13] But the evidence Turner cites—testimony from Dr. Rassouli and another medical expert, Dr. Michael Majchrowitz—was disputed. The municipality presented sufficient evidence to present a genuine issue of fact.

## D. Even if the Municipality's Disclosure Was Incomplete Under Alaska Civil Rule 26(a), there Was No Reversible Error.

### 1. Turner was not prejudiced by any failure to disclose.

■ Turner asserts that the municipality violated its Alaska Civil Rule 26(a)(1) duty to disclose its payment to USAA. She seems to argue that the disclosure violation was sanctionable under Alaska Civil Rule 37(c) and that denying the offset was the required sanction. Turner does not, however, argue that the trial court committed reversible error by failing to grant Rule 37 sanctions. As an appellate court, we review the trial court's rulings for legal error, but Turner has not specified how the trial court erred. Furthermore, it appears that Turner first sought Rule 37 sanctions when she

---

**10.** *Wal–Mart, Inc. v. Stewart*, 990 P.2d 626, 631–32 (Alaska 1999) (quoting *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978)).

**11.** *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 656 (Alaska 2001).

**12.** *Weidner v. Hibdon*, 989 P.2d 727 (Alaska 1999).

**13.** *Id.* at 732.

sought reconsideration of the superior court's final judgment. She therefore did not preserve any contention that it was error not to impose a suitable sanction below.[14] She did argue below that the alleged failure to disclose bore on both the offset and offer of judgment issues.

Rule 26(a)(1) requires each party to disclose, without awaiting a discovery request, "the factual basis of each of its claims or defenses"[15] and to provide "a copy of, or a description by category and location of, all documents ... that are relevant to disputed facts alleged with particularity in the pleadings."[16] Rule 37(c) allows the court to sanction parties for failing to disclose information required by Rule 26(a).

The municipality argues that it provided documentation of the payment in its Rule 26 initial disclosures. The documentation it refers to consists of a ten-page fax from "USAA Subrogation" to Ward North America, the municipality's adjuster. One page of the fax bears a handwritten notation that appears to indicate that a payment in the amount of $4,345.08 was sent to USAA on May 14, 2002. The notation was initialed by Johanna Grasso, the Ward North America employee to whom the fax was sent. Turner does not dispute that she received this document among the municipality's disclosures, but she contends that the notation is ambiguous and does not qualify as a disclosure.

We conclude that the municipality's initial disclosures were incomplete, and also should have included any available canceled check or other evidence of payment. But assuming that the municipality's disclosure was inadequate, there is no indication the failure harmed Turner. The total amount of damages sought for medical expenses ($123,-246.57) was so large that it is extremely unlikely a more complete disclosure of the $4,345.08 payment would have caused Turner to accept the $45,000 offer of judgment. Indeed, Turner did not assert in the superior court, and does not contend on appeal, that she would have done anything differently had she been fully advised of the payment. Under these circumstances, there is no basis for concluding that the municipality's arguably inadequate disclosure caused Turner prejudice and that the trial court somehow abused its discretion by denying sanctions.[17]

## 2. The municipality's Rule 68 offer of judgment was valid.

Turner appeals the trial court's grant of attorney's fees to the municipality under Alaska Civil Rule 68. Turner asserts that the municipality's failure to disclose its USAA payment invalidated its $45,000 Rule 68 offer of judgment because the allegedly undisclosed payment made the offer more valuable than it appeared to be on its face. Turner assumes that a party cannot evaluate an offer of judgment if the other party has withheld disclosable information. But Turner's argument fails because the municipality did not altogether withhold information of the payment, and there is no suggestion that Turner should be excused from the consequences of rejecting the offer on the theory that she would have acted differently had a more complete disclosure been made.

We review questions of law such as an offer of judgment's compliance with Rule 68 under an independent de novo standard.[18] The court adopts "the rule of law that is most

---

14. *DeNardo v. GCI Commc'n Corp.*, 983 P.2d 1288, 1292–93 (Alaska 1999) (holding that appellant waived issue first raised in superior court in motion for reconsideration).

15. Alaska R. Civ. P. 26(a)(1)(A).

16. Alaska R. Civ. P. 26(a)(1)(D).

17. Turner also asserts that the municipality was required to plead offset as an affirmative defense under Alaska Civil Rule 8(c). In Alaska we have not yet addressed whether Rule 8(c), which requires a defendant to plead "payment" as an affirmative defense, applies to claims of offset, such as the municipality's. But Turner's Rule 8(c) claim fails for the same reason her Rule 26(a) and Rule 37(c) claims fail: she has not shown, nor even claimed, that the outcome of the case would have been different had the municipality more thoroughly disclosed the payment or had its answer pled for offset. She has not demonstrated that any possible trial court error in this regard requires reversal.

18. *Thomann v. Fouse*, 93 P.3d 1048, 1050 (Alaska 2004).

persuasive in light of precedent, policy, and reason."[19]

Under Alaska Civil Rule 68(b) a party receiving a judgment less favorable than a rejected offer of judgment must pay a percentage of costs and attorney's fees calculated from the date of the offer. An offer of judgment is treated as an offer for a contract; it requires a meeting of the minds on the essential terms of the offer.[20] It also "must specify a definite sum and must be unconditional."[21]

The municipality's offer of judgment was for $45,000.00, "plus allowable costs pursuant to Alaska R.Civ.P. 79, prejudgment interest as provided by law, and attorney fees as permitted by Alaska R.Civ.P. 82." The offer also specified that the amount would "constitute complete satisfaction of all claims for money which are made by the Plaintiff, Evadine Turner, including all medical liens, subrogation claims, and other claims for reimbursement."

In *Jaso v. McCarthy* we held that an offer of judgment was not conditional even though it included language obligating the offeree to "satisfy all liens" from the proceeds of the offer.[22] We determined that there was no material difference between *Jaso* and *Grow v. Ruggles*,[23] in which we held that "an offer is not conditional even though it acknowledges the existence of a lien and notes that a party is responsible for any liens that may exist against a settlement."[24]

Turner does not argue that the offer was conditional, but rather that it was ambiguous. Turner relies on *Thomann v. Fouse*.[25] In *Thomann* we held that an offer's reference to a possible future arbitration made the offer ambiguous and "too indefinite to support an award under Rule 68."[26] We reasoned that "even if Fouse meant [the reference to future arbitration] to be irrelevant, the presence of this detail invited confusion and could reasonably have led Thomann to wonder what effect the 'subsequent arbitration' might have on her medical claim."[27]

*Thomann* is distinguishable. Whereas *Thomann* dealt with an offer's reference to future arbitration regarding liens, the alleged ambiguity in the municipality's offer of judgment lies in what it does not say—namely that one of the liens has been satisfied. This is not enough to invalidate the offer. The offer does not purport to lay out the various expenses for which Turner will be responsible; it merely proposes to release the municipality's responsibility for them. The fact that the USAA lien had already been paid, and therefore extinguished, simply means that it was not among any unnamed liens and reimbursements that Turner would have to pay out of the offer. The offer was consequently not ambiguous. We therefore affirm the trial court's grant of post-offer attorney's fees.

### E. The Municipality Adequately Demonstrated that the Jury's Award Duplicated the Medical Expenses Covered by the Municipality's Payment to USAA.

Turner asserts that it was error for the trial court to give the municipality a $4,345.08 offset for its payment to USAA. It is undisputed that the municipality repaid USAA for some of Turner's medical bills, but Turner argues that to receive an offset, the municipality had to establish that its payment to USAA was for the same expenses covered by the jury's damage award.[28] The

19. *Jaso v. McCarthy*, 923 P.2d 795, 801 (Alaska 1996) (citations omitted).

20. *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973).

21. *Id.*

22. *Jaso v. McCarthy*, 923 P.2d 795, 801–02 (Alaska 1996).

23. *Grow v. Ruggles*, 860 P.2d 1225 (Alaska 1993).

24. *Jaso*, 923 P.2d at 801–02.

25. *Thomann v. Fouse*, 93 P.3d 1048 (Alaska 2004).

26. *Id.* at 1049.

27. *Id.* at 1051.

28. Both parties cite to *Falconer v. Adams*, 974 P.2d 406 (Alaska 1999), in discussing whether the municipality must make an affirmative same-injury showing to receive an offset. But *Falconer* is not directly on point. In *Falconer* we indicated that a party seeking an offset under AS

municipality does not dispute this proposition; it instead argues that there is sufficient evidence in the record to conclude that the jury award did include the same expenses covered by USAA's discharged subrogation lien.

Under the common law a tort award may be offset by any amount previously paid by a defendant (or its insurer) towards its tort liability.[29] This includes payments made to a plaintiff's subrogated insurer.[30] Although few courts have addressed the issue, the trend seems to be towards granting an offset for prior payments only when they directly correspond to specific damages awarded by the jury.

There are two situations in which defendants have traditionally been required to show that a prior payment was for the same injury or expenses covered by damages awarded by the jury: when payment came from a joint tortfeasor and when payment came from a collateral source.[31] Although there is less case law regarding the showing of same-injury or same-expense when an offset is sought for a defendant's own prior payments, precedent from several states supports such a requirement.

### 1. Common law burden of proving offset: joint tortfeasors

Defendants have typically been granted offsets for prior payments made by joint tortfeasors, although this offset is no longer arguably available in Alaska.[32] A defendant seeking an offset for a joint tortfeasor's payment must prove that the prior payment was for the same expenses for which it is liable.[33] This approach is instructive even though Turner's case does not involve a joint tortfeasor's payment, and even though a defendant in Alaska no longer has an arguable offset claim for a joint tortfeasor's payment.

The dissenting opinion in *Falconer v. Adams* considered the offset question, and argued that a defendant should be granted an offset under the common law if it could prove that damages assessed against it coincided with previously paid damages.[34] The standard the dissent effectively urged is the one that pertains to prior payments by joint tortfeasors. The dissent cited to *Wood v. Diamond M Drilling Co.*[35] and to cases cited by *Wood* to support the dissent's contention that the defendant must show that the prior payments were for the same expenses compensated by the trial court. The cases cited in *Wood* are joint tortfeasor cases. *Wood* primarily relied on *Cates v. United States*.[36]

09.17.070 for payments from collateral sources must show that the payments were for the same expenses compensated by the jury award. 974 P.2d at 412–13. This case concerns not a collateral source payment by another payor, but a prior payment by the defendant itself. AS 09.17.070 therefore has no direct application here.

**29.** *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 791 (Alaska 1999). *See also* Restatement (Second) of Torts § 920A (1979).

**30.** *See Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983) (holding that plaintiff could not recover for subrogated claim subrogee had already settled).

**31.** Joint tortfeasors are not treated as collateral sources; a defendant typically has a common law right to offset for any joint tortfeasor's prior contribution for the same expenses, while offsets for collateral source payments require statutory authorization. *See* Restatement (Second) of Torts § 920A (1979). Defendants in Alaska have no right to receive an offset for payments made by a joint tortfeasor. *Petrolane Inc. v. Robles*, 154

P.3d 1014 (Alaska 2007). Nonetheless, the procedures by which joint tortfeasors elsewhere may seek an offset remain instructive in the case before us.

**32.** *Compare* Restatement (Second) of Torts § 920A(1) (1979) ("A payment made by a tortfeasor ... to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.") *with Petrolane Inc. v. Robles*, 154 P.3d at 1020–21.

**33.** *See, e.g., Phillips v. Liberty Mut. Ins. Co.*, 813 F.2d 1173, 1176 (11th Cir.1987); *Boyett v. Keene Corp.*, 815 F.Supp. 204, 209 (E.D.Tex.1993).

**34.** *Falconer v. Adams*, 974 P.2d 406, 416 (Alaska 1999) (Matthews, C.J., dissenting).

**35.** *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1171 (5th Cir.1982).

**36.** *Cates v. United States*, 451 F.2d 411, 417–18 (5th Cir.1971). *Wood* itself concerns whether a jury award for lost wages duplicates the same

In *Cates*, the United States government sought an offset for prior payments made by another defendant, Reynolds.[37] *Cates* held that "the Government is not entitled to a reduction equal to the amounts paid by Reynolds specifically for maintenance and cure ... since there is no affirmative showing on the record that any of the $8,000 judgment duplicated the maintenance and cure and medical expense items" awarded against the government.[38]

Other jurisdictions have required such a showing from joint tortfeasors, especially if one defendant settles and another defendant seeks an offset for the amount paid by the settling defendant. For example, in *Boyett v. Keene Corp.*, a defendant sought an offset in the amount of a joint tortfeasor's prior settlement.[39] The United States District Court in Texas held that "[t]he burden of proving that the settlement and the judgment represented common damages, such that the plaintiff would receive a double recovery if no offset were allowed, rests on the party seeking a credit."[40] Likewise, in *Phillips v. Liberty Mutual Insurance Co.*, the Eleventh Circuit Court of Appeals, citing Georgia law, stated that a joint tortfeasor is entitled to a setoff only if the amount is proved.[41] And in *Zivitz v. Greenberg*, the Seventh Circuit Court of Appeals held that "[n]onsettling tortfeasors ... are entitled to a setoff only for damages that are awarded for the same injury for which the settling defendants compensated the plaintiff."[42] These cases demonstrate that, at least for prior payments by joint tortfeasors, courts have required a same-injury or same-expenses showing to grant an offset.

### 2. Statutory burden of proving offset: collateral sources

In Alaska AS 09.17.070 allows defendants offsets for certain collateral source payments received by injured plaintiffs.[43] It provides that after the factfinder has rendered an award "a defendant may introduce evidence of amounts received ... for the same injury from collateral sources."[44] Although we have not directly addressed the issue, two of our opinions indicate that AS 09.17.070 requires a defendant to prove that prior collateral source payments were for the same medical expenses awarded by the jury.

In *Falconer*, we noted that one problem with the defendant's offset claims was that it was "entirely unclear" "whether Allstate's check reimbursed State Farm for the same medical expenses awarded by the jury."[45] We therefore interpreted AS 09.17.070 as requiring a same-expenses showing.[46]

In *Liimatta v. Vest*, the plaintiff argued that the defendant could not receive an offset under AS 09.17.070 because the defendant did not "establish that the funds advanced were intended to compensate her for 'the same injury' for which the jury awarded damages."[47] Although we expressed no disagreement with the "same injury" standard under AS 09.17.070, we did not have to address the issue because we held there that AS 09.17.070 does not apply to payments by a non-collateral source.[48]

Even though AS 09.17.070 does not apply here, it does provide a useful model for dealing with offsets. Its requirement that the

---

jury's award for maintenance and cure. *Wood*, 691 F.2d at 1171.

37. *Cates*, 451 F.2d at 417–18.

38. *Id.* at 417.

39. *Boyett v. Keene Corp.*, 815 F.Supp. 204, 209 (E.D.Tex.1993).

40. *Id.*

41. *Phillips v. Liberty Mut. Ins. Co.*, 813 F.2d 1173, 1176 (11th Cir.1987) (citations omitted).

42. *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir.2002).

43. Although both parties refer to AS 09.17.070 on appeal, the statute is not directly on point because the municipality's payment to USAA is not a collateral source. But the statute does serve as a useful model for considering whether to require a same-injury showing.

44. AS 09.17.070(a).

45. *Falconer*, 974 P.2d at 412–13.

46. *Id.*

47. *Liimatta v. Vest*, 45 P.3d 310, 319–20 (Alaska 2002).

48. *Id.* at 320.

defendant show that any payments for which she seeks an offset are included in the jury award reflects in an analogous context a policy choice about a defendant's burden and the consequences of a failure of proof.

Courts have good reason to require a same-injury or same-expense showing when prior payments are made by either a joint tortfeasor or a collateral source. The purpose of offset in both situations is avoiding double recovery; therefore, if the prior payment was for a different injury than the one compensated at trial, no issue of double recovery arises. It is logical to err on the side of requiring the defendant to pay because the joint tortfeasor's prior payment or the collateral source payment did not come out of the trial defendant's own pocket. Putting the burden of proof on the trial defendant to show that the payment was for the same injury or expense allows the court to protect the plaintiff's interests without risking unfairness to the defendant. Either way, the defendant will not have to pay twice for the same expenses.

If the trial defendant made the prior payments, there are two primary rationales for allowing an offset: avoiding double recovery by the plaintiff, and avoiding making the defendant pay twice. If the jury has not been asked to specify what damage items it is compensating, the court risks both double payment by the defendant and inadequate compensation of the plaintiff. There are thus competing interests on either side of the scale, and it is not as clear that the defendant should have the burden of proof on the same-expenses issue. But we think that on balance, fairness favors requiring the defendant to show that its prior payment covered the same expenses included in the jury's award. Defendants should be encouraged to make advance payments for injuries for which they are liable, but it is not unreasonable to require them to show that any amount of offset

directly corresponds to the trial award. This is especially so because the defendant is in the best position to know what expenses it intended to reimburse when it made advance payments to the plaintiff. Requiring a same-expenses showing encourages the defendant to be straightforward about advance payments and to ask the fact-finder to make specific damages findings, or to take the chance it may not receive a full offset.

### 3. Offsets for the trial defendant's prior payments

Courts elsewhere have indicated that to receive an offset a defendant must prove that its own advance payments are for the same expenses compensated by the jury. In *Douglas v. Adams Trucking Co.*, the Arkansas Supreme Court addressed the question of how much offset to grant a defendant who had made advance payments to the plaintiff.[49] The court affirmed the trial court's decision to offset the jury award by advances paid by the defendant but nonetheless remanded, holding that not all of the expenses paid by the defendant should be offset.[50]

The plaintiff had been injured when he was struck by defendant's truck.[51] The defendant's liability carrier made a series of advance payments to the plaintiff for medical expenses, loss of property, and loss of income.[52] On appeal, the court first held that despite the defendant's failure to make an explicit agreement with the plaintiff that the advances would count towards future liability, the defendant was still entitled to an offset.[53] The court then determined the amount of the offset.[54] Although the trial court had granted the defendant an offset for the full amount it had paid, the supreme court declined to do so.[55] Instead, the court considered what each specific payment had been for and whether the payment coincided

49. *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 46 S.W.3d 512 (2001).

50. *Id.* at 519.

51. *Id.* at 513.

52. *Id.* at 513–14.

53. *Id.* at 516–17.

54. *Id.* at 518–19.

55. *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 46 S.W.3d 512, 519 (2001).

with costs awarded by the jury.[56] It determined that although most of the advance payments could be offset, there should be no offset as to the $100,000 pain and suffering award because there was no evidence any of the defendant's advance payments were intended to compensate the plaintiff for pain and suffering.[57] The court also declined to recognize an offset for an advance payment intended to reimburse the plaintiff for one damages item because it concluded that "this advance does not correspond to any of the jury's special verdicts."[58] Thus, the court applied offsets only for those expenses that could be linked to specific damages awarded by the jury.

In *Cottrell v. Burlington Northern Railroad* the Montana Supreme Court considered whether the plaintiff's lost wages previously paid by the defendant were included in the jury's damages award.[59] Although we face a slightly different inquiry here (where the question is not about the type of damages, but rather the type of injury), both issues present similar policy choices between undercompensation and overpayment.

The *Cottrell* court held on appeal that the lower court had erred in refusing to grant an offset for prior amounts paid by the defendant for wage loss.[60] The court on appeal did not specifically say that the defendant was or was not required to make a same-damages showing, but its reasoning seems to indicate that such a showing was required. In holding that the lower court had erred in denying the offset, the court did not hold that an offset was always required, but rather that in that particular case it was logical to conclude that at least part of the jury's award was for the same expenses previously paid by the defendant.[61] This was so because the jury had awarded damages totaling

more than $1.3 million, and the plaintiff had claimed wage loss damages of $862,230 and general pain and suffering damages of between $700,000 and $1,000,000.[62] "By logical deduction at least $300,000 of [the] recovery had to be compensation for wage loss."[63] The court remanded "for a determination of the exact amount of offsets to which defendant [was] entitled."[64] By going through the steps to prove that some of the jury award had to be for the same damages sought by the defendant, the court indicated that an offset would not be granted absent some positive proof that the defendant's payments coincided with the jury award.

These courts have all indicated that a defendant has the burden of showing that its prior payment and the jury award were for the same injury or expense. We agree. If a defendant intends to seek an offset, it is responsible for ensuring that the jury's verdict is sufficiently specific for the trial court to determine whether the jury awarded the same expenses for which the offset is sought. Although Turner argued that it was unfair for the municipality to seek an offset after objecting to a damages allocation by the jury, the municipality's opposition to the post-verdict allocation sought by Turner was not inappropriate, given its legitimate interest in avoiding the appearance of an inconsistent verdict.[65] But even though the municipality legitimately opposed Turner's post-verdict request for an allocation in this case, it still bore the responsibility for showing that its past payment covered the same expenses awarded by the jury.

In the Montana case, the jury awarded enough damages that the court could logically deduce that there was at least some over-

56. *Id.* at 518–19.

57. *Id.* at 519.

58. *Id.*

59. *Cottrell v. Burlington N. R.R.*, 261 Mont. 296, 863 P.2d 381 (1993).

60. *Id.* at 389.

61. *Id.* at 388–89.

62. *Id.*

63. *Id.* at 389.

64. *Id.*

65. Just before moving for allocation of past medical expenses, Turner's counsel asked that the jury be required to reexamine its award of past medical expenses on the ground that it was inconsistent.

lap between the prior payment and the award.

Here, the jury's award of $12,895 for Turner's past medical costs was for a small fraction of the total medical damages Turner claimed. Nonetheless, we think it important that in final argument the municipality conceded liability for the medical expenses covered by its pretrial payment, and also argued that about $8,000 of past medical expenses were attributable to the accident. There was consequently no dispute that the municipality owed these conceded amounts for these medical services. Indeed, there would have been no basis for the jury to fail to award the full amount of the conceded items. We therefore must assume that the jury's past medical cost award of $12,895 included the expenses for which the municipality seeks an offset. Consequently, the trial court did not err in granting the municipality the $4,345.08 offset.

## IV. CONCLUSION

We therefore AFFIRM the judgment below.

CARPENETI, Justice, not participating.